1  BLANK ROME LLP
   Ana Tagvoryan (SBN 246536)
2  ATagvoryan@BlankRome.com
   Harrison Brown (SBN 291503)
3  hbrown@blankrome.com
   Julianna Simon (SBN 307664)
4  JMSimon@BlankRome.com
   2029 Century Park East | 6th Floor
5  Los Angeles, CA 90067
   Telephone: (424) 239-3400
6  Facsimile: (424) 239-3434

7  Attorneys for Defendant, MOUSEFLOW INC.

8           **UNITED STATES DISTRICT COURT**

9          **NORTHERN DISTRICT OF CALIFORNIA**

10

11 DANIEL ONN, individually and on behalf of      Case No. 5:20-cv-07929-BLF
   all other similarly situated,
12                                                **DEFENDANT MOUSEFLOW INC.'S**
                                                  **MOTION TO DISMISS PURSUANT TO**
13                          Plaintiff,            **FED. R. CIV. P. 12(b)(1), 12(b)(2) AND**
              v.                                  **12(b)(6)**
14
   CARNIVAL CORP. and MOUSEFLOW,                  *[Concurrently filed with Declaration of Jess*
15 INC.,                                          *Frandsen and (Proposed) Order]*

16                          Defendants.           Hearing:
                                                  Date:   July 1, 2021
17                                                Time:   9:00 A.M.
                                                  Place:  San Jose Courthouse, Courtroom 3
18                                                        280 South 1st Street
                                                         San Jose, CA 951134
19                                                Judge:  Hon. Beth L. Freeman
20
                                                  Compl.: November 10, 2020
21                                                FAC:    February 16, 2021
                                                  Trial:  Not set
22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION. ...............................................................................................1

II.     RELEVANT BACKGROUND. ..........................................................................4

     A.      Mouseflow's Software and Services...........................................................4

     B.      Carnival's Website....................................................................................4

     C.      Plaintiff's Allegations. ..............................................................................5

III.    LEGAL STANDARD. ........................................................................................5

IV.     MOUSEFLOW IS NOT SUBJECT TO PERSONAL JURISDICTION. ...............7

     A.      Mouseflow is Not Subject to General Personal Jurisdiction. ......................7

     B.      Mouseflow is Not Subject to Specific Personal Jurisdiction.......................7

          1.      Mouseflow Did Not Purposefully Direct Acts Toward California...................8

          2.      Plaintiff's Claims Do Not Arise Out of the SaaS Agreement.........................10

          3.      Exercising Jurisdiction Over Mouseflow in California Would Not Be Reasonable. ...................................................................................................11

V.      PLAINTIFF FAILS TO STATE CLAIMS UNDER RULES 12(b)(1) AND 12(b)(6)...........13

     A.      Plaintiff Fails to Plausibly Allege Facts to Support a Violation of Section 631(a). ......................................................................................................13

          1.      Mouseflow Did Not Violate Section 631(a) Because It Was Not a Third Party to Plaintiff's Purported Communications with Carnival. .............14

          2.      Mouseflow Did Not Violate Section 631(a)[1] Because Plaintiff Does Not Allege a Telegraph or Telephone Wire, Line or Cable............................17

          3.      Mouseflow Did Not Violate Section 631(a)[2] Because the Software Code Did Not Tap into the "Contents" of "Communications."......................17

          4.      Plaintiff's Claim Under 631(a) Fails Because Plaintiff Was on Notice of Mouseflow's Conduct....................................................................................19

     B.      Plaintiff Fails to Plausibly Allege Facts to Support a Violation of Section 635..........21

          1.      Plaintiff Lacks a Private Right of Action and Standing.................................21

          2.      Mouseflow's Software Is Not a Device Primarily or Exclusively Designed for Eavesdropping Upon Communications......................................22

     C.      Plaintiff Fails to State a Claim for Invasion of Privacy. ............................24

VI.     CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................6, 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................................6

*Belluomini v. Citigroup, Inc.,*
    No. CV 13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013)........................24

*Brainerd v. Governors of the Univ. of Alta.,*
    873 F.2d 1257 (9th Cir. 1989) ........................................................................................5

*Brodsky v. Apple Inc.,*
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................14, 17, 18

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)........................................................................................................9

*Cairo, Inc. v. Crossmedia Servs., Inc.,*
    No. C 04-04825 JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005)................................20

*Caruth v. Int'l Psychoanalytical Ass'n,*
    59 F.3d 126 (9th Cir. 1995) ....................................................................................12, 13

*CE Distrib., LLC v. New Sensor Corp.,*
    380 F.3d 1107 (9th Cir. 2004) ..................................................................................8, 11

*Cohen v. Casper Sleep, Inc.,*
    Nos. 17cv9325, 17cv 9389, 17cv9391, 2018 WL 3392877 (S.D.N.Y. July 12,
    2018) ............................................................................................................................21

*Core-Vent Corp. v. Nobel Indus. AB,*
    11 F.3d 1482 (9th Cir. 1993) ..................................................................................12, 13

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)........................................................................................................7

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008)......................................................................................................21

*Dohrmann v. Intuit, Inc.,*
    823 F. App'x 482 (9th Cir. 2020) ................................................................................20

DEFENDANT MOUSEFLOW INC.'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(2) & 12(b)(6)

*E\*Healthline.com, Inc. v. Pharmaniaga Berhad*,
  No. 2:18-cv-01069-MCE-EFB, 2018 WL 5296291 (E.D. Cal. Oct. 23, 2018) .............................9

*Falkenstein v. Shipco Transp., Inc.*,
  Case No. 13-cv-03605-WHO, 2013 WL 5770380 (N.D. Cal. Oct. 24, 2013) ...............................12

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, Ltd.,
  828 F.2d 1439 (9th Cir. 1987) ...............................................................................................13

*Ganezer v. DirectBuy, Inc.*,
  Case No. CV 08-8666 GAF (RCx), 2012 WL 12867971 (C.D. Cal. Jan. 30, 2012) ....................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ...............................................................................................................7

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ...............................................................................................11

*Hill v. NCAA*,
  865 P.2d 633 (Cal. 1994) .......................................................................................................24

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ...............................................................................................18

*In re DoubleClick Inc. Priv. Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) .....................................................................................22

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) .....................................................................................22

*In re Facebook Internet Tracking Litig.*,
  263 F. Supp. 3d 836 (N.D. Cal. 2017) .......................................................................14, 23, 25

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................................................ *passim*

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................................................................13, 14, 17, 25

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) .......................................................................................24

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................................24

*In re Jose A.*,
  5 Cal. App. 4th 697 (1992) .....................................................................................................19

*In re Lenovo Adware Litig.*,
  No. 15-md-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .....................................21

*In re Palmdale Hills Prop., LLC*,
  654 F.3d 868 (9th Cir. 2011) ...................................................................................6

*In re Transcon Lines*,
  58 F.3d 1432 (9th Cir. 1995), *as amended on denial of reh'g* (July 10, 1995) ...........16

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) .........................................................................17, 18

*Lazy Y Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ...................................................................................6

*Leroy-Garcia v. Brave Arts Licensing*,
  No. C 13-01181 LB, 2013 WL 4013869 (N.D. Cal. Aug. 5, 2013) ...............................7

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................24

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................6, 21

*Martinez v. Aero Caribbean*,
  764 F.3d 1062 (9th Cir. 2014) ...................................................................................7

*Matera v. Google Inc.*,
  No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016).............14, 17, 19

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .............................................................................7, 12

*McGibney v. Retzlaff*,
  No. 14-cv-01059-BLF, 2015 WL 3807671 (N.D. Cal. June 18, 2015).........................9

*Menken v. Emm*,
  503 F.3d 1050 (9th Cir. 2007) .................................................................................10

*Michael v. New Century Fin. Servs.*,
  65 F. Supp. 3d 797 (N.D. Cal. 2014) ...................................................................6, 8, 9

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ...................................................................................6

*People ex rel. Younger v. Superior Court*,
  16 Cal. 3d 30 (1976) ...............................................................................................19

*People v. Mobil Oil Corp.*,
  143 Cal. App. 3d 261 (Ct. App. 1983)......................................................................22

*People v. Ratekin*,
  212 Cal. App. 3d 1165 (Ct. App. 1989)...........................................................15, 16, 22

DEFENDANT MOUSEFLOW INC.'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(2) & 12(b)(6)

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................................................20

*Peterson v. Kennedy*,
   771 F.2d 1244 (9th Cir. 1985) .................................................................................................7

*Powell v. Union Pac. R. Co.*,
   864 F. Supp. 2d 949 (E.D. Cal. 2012).....................................................................................13

*Revitch v. New Moosejaw, LLC*,
   Case No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)................................16

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (Ct. App. 1975).......................................................................................14

*Roth v. Garcia Marquez*,
   942 F.2d 617 (9th Cir. 1991) .............................................................................................7, 13

*Sayre v. Burle Indus. Inc.*,
   988 F.2d 121 (9th Cir. 1993) ..................................................................................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ...............................................................................................5, 8

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) ....................................................................................................6

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) .......................19, 20

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).............................................................................................................21

*Tavernetti v. Superior Court*,
   22 Cal. 3d 187 (1978) .............................................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...................................................................................................................6

*Thomasson v. GC Servs. Ltd. P'Ship*,
   321 F. App'x 557 (9th Cir. 2008) ............................................................................................14

*United States v. Reed*,
   575 F.3d 900 (9th Cir. 2009) ..................................................................................................18

*United States v. Schweihs*,
   569 F.2d 965 (5th Cir. 1978) ..................................................................................................23

*Verizon v. FCC*,
   740 F.3d 623 (D.C. Cir. 2014) ................................................................................................17

*Vons Companies, Inc. v. Seabest Foods, Inc.*,
    14 Cal. 4th 434 (1996) ..................................................................................................10

*Voodoo SAS v. SayGames LLC*,
    No. 19-cv-07480-BLF, 2020 WL 3791657 (N.D. Cal. July 7, 2020)............................10

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................................................8, 9

*Walsh v. Dept. of Alcoholic Bev. Control*,
    59 Cal. 2d 757 (1963) ...............................................................................................22

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (Ct. App. 1979)........................................................................15

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .....................................................................................6

*Yunker v. Pandora Media, Inc.*,
    No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013).......................24

**Statutes**

18 U.S.C.A. § 2512 .............................................................................................................21

Cal. Civ. Code § 1798.140(w) ............................................................................................16

Cal. Code Civ. Proc. § 410.10 .............................................................................................6

Cal. Penal Code § 630, et seq. .................................................................................... *passim*

Cal. Penal Code § 635........................................................................................................21

California Consumer Privacy Act, 2018 Cal. Legis. Serv. Ch. 55 (A.B. 375) ...................16

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(A) ....................................................................................................5

Fed. R. Civ. P. 12(b)(1)...............................................................................................1, 6, 13

Fed. R. Civ. P. 12(b)(2)...................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 6, 13

DEFENDANT MOUSEFLOW INC.'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(2) & 12(b)(6)

1

2

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

4

5

6

7

8

9

10

11

      PLEASE TAKE NOTICE that on July 1, 2021, at 9:00 a.m., or as soon as the parties may be heard, before the Honorable Beth L. Freeman, United States District Court Judge, in Courtroom 3, located at San Jose Courthouse, 280 South 1st Street, San Jose, California 951134, Defendant Mouseflow Inc. ("Mouseflow"), will and hereby does move to dismiss the First Amended Complaint ("FAC") of Plaintiff Daniel Onn ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Jess Frandsen, co-defendant Carnival Corp's ("Carnival") Request for Judicial Notice, the pleadings and documents on file in this action, and such other evidence and argument as may hereafter be presented to this Court.

12

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

13

14

1.    Whether this Court should dismiss the claims in this action against Mouseflow for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

15

16

2.    Whether this Court should dismiss all of the claims in this action against Mouseflow for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

17

18

3.    Whether this Court should dismiss the second claim in this action against Mouseflow for lack of standing under Fed. R. Civ. P. 12(b)(1).

19

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

20

## I.    INTRODUCTION.

21

22

23

24

25

26

27

      Plaintiff visited Carnival's website, carnival.com (the "Website"), numerous times and interacted with the Website. Plaintiff does not specifically allege what more he did on the Website other than "the kinds of things people typically do when looking at websites, such as clicking on links to webpages of interest, scrolling through pages, using dropdown menus, and using the website search tool." FAC, ¶ 3. Plaintiff, a professional travel agent, is now upset that Carnival may have information related to Plaintiff's website visits and interactions, even though he voluntarily provided such information to Carnival by visiting the Website. Plaintiff believes that such website interactions

28

160615.00601/125244153v.4          1
DEFENDANT MOUSEFLOW INC.'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(2) & 12(b)(6)

should not have been recorded or analyzed by Carnival—through the use of a third party website tool or otherwise—because said interactions were "private" and constitute "confidential electronic communications," that are protected by this state's wiretap and recording laws. Plaintiff, of course, fails to allege what privacy interest he had in such innocuous website interactions, what information he relayed to Carnival (if any), nor any specifics of where he was or who he was with during those website visits. What is more, Plaintiff is not only upset at Carnival for obtaining the very information he provided when he visited the Website, but he also wants this Court to find the service provider to Carnival, Mouseflow, liable for surreptitious third-party wiretapping under California's Penal Code.

Mouseflow is a software as a service (SaaS) provider to businesses that own and/or operate websites, such as Carnival.[1] Businesses use Mouseflow's software and analytical tools to understand how visitors use the businesses' websites, allowing them to improve functionality and facilitate a smooth experience when visitors navigate the business's sites. As alluded to by Plaintiff, businesses like Carnival must add a Javascript code to their websites, and, per settings chosen by the business, Mouseflow's software code collects certain usage information and characteristics from visits to the website, analyzes the information, and provides the analytics to the business through a cloud-based platform. Plaintiff does not allege that the information collected from visits to the Website is used for any purpose other than to provide the information (and the analytics stemming from same) to businesses who operate those websites, under service contracts. Nevertheless, Plaintiff seeks to criminalize the service Mouseflow provides, arguing that it amounts to surreptitious wiretapping and eavesdropping that is unlawful under California's Penal Code Sections 631 and 635, part of the California Invasion of Privacy Act ("CIPA"), and an unlawful invasion of privacy under California's Constitution.

---

[1] SaaS is a method of software delivery that is centrally hosted and allows data to be accessed from a cloud-based server over the internet. As such, once the business pays for the software, it operates as a license and the software provider takes a back seat and is not involved in the use of said software.

1  While Plaintiff's causes of action are legally groundless, the Court need not reach the merits

2  of his claims against Mouseflow because Mouseflow is not subject to personal jurisdiction in

3  California. First, the Court lacks personal jurisdiction over Mouseflow, a Texas corporation with

4  headquarters in Texas. Second, there is no specific jurisdiction. The FAC is devoid of any

5  allegations of purposeful forum-related conduct by Mouseflow, who merely provided its tool to

6  Carnival, and the assertion of personal jurisdiction over Mouseflow here would be unreasonable.

7  But even if Plaintiff could proceed with suing Mouseflow in California, Plaintiff fails to

8  allege facts necessary to establish the elements of his claims, even after previewing the previously

9  filed motions to dismiss. First, as a threshold matter, Section 631(a) deals with wiretapping by a

10 third party. Here, Plaintiff admits that Mouseflow was a service provider and that *Carnival*

11 purchased and used Mouseflow's software and code; thus, Mouseflow was not a third-party actor

12 under CIPA and therefore cannot be held liable. Second, Plaintiff fails to allege that a telegraph or

13 telephone line, wire or cable was used, or that "electronic communications" were intercepted or

14 recorded to learn "contents" thereof. While courts have held that email messages may qualify as

15 communications under CIPA, the same is not true for website interactions. Plaintiff's conclusory

16 labels are of no moment. Moreover, Plaintiff fails to identify a single message from which contents

17 could be obtained—he fails to allege that he transmitted any specific communication to Carnival by

18 way of either a call-to-action or webform. Indeed, he fails to allege *any facts* about his specific

19 website interactions, including any indication that private content was *tapped* and *learned* by

20 Mouseflow the entity. All he alleges is that Mouseflow's *software* was used by Carnival. Thus,

21 Plaintiff fails to demonstrate that Mouseflow engaged in any conduct prohibited by 631(a).

22 Plaintiff's claim for violation of Section 635 fares no better. Plaintiff fails to plausibly allege

23 that the JavaScript code used by Carnival is an "eavesdropping device," as those terms are used in

24 the statute, and also lacks standing to bring the claim because he does not allege a particularized and

25 concrete injury as a result of Mouseflow's mere manufacture and sale of such device. Plaintiff

26 admits as much when he complains that Carnival's privacy policy could have solved the problem by

27 providing him sufficient notice of the use of the tracking tool.

28

Finally, Plaintiff fails to state a claim for invasion of privacy under the Constitution of California. Plaintiff cannot plausibly allege that he held a reasonable expectation of privacy in the information he provided to Carnival, when he simultaneously fails to explain what information he provided, how he had a reasonable expectation of privacy in said information, and why Carnival was wrong in trying to anonymously analyze said information. Nor does Plaintiff plausibly allege that the data collection at issue constitutes an "egregious breach of social norms." Thus, the FAC should be dismissed with prejudice.

## II.    RELEVANT BACKGROUND.

### A.    Mouseflow's Software and Services.

Mouseflow is a Texas corporation with its headquarters in Texas. FAC, ¶ 7. Plaintiff considers Mouseflow's "JavaScript code" to be a wiretap "device" that secretly records and allows website owners to learn certain information about a person's visit to the website, including the visitor's location, device type, keystrokes, mouse clicks, scrolls and "other interactions." *Id.*, ¶¶ 1, 16, 17-19, 52. Plaintiff claims that Carnival embedded Mouseflow's JavaScript code on its website pursuant to a SaaS agreement, which records and "transfers" the information to Mouseflow's server that hosts the software platform, which Carnival accesses to "gain valuable insight about their website visitors' journey and conversions." *Id.*, ¶¶ 23-25.

### B.    Carnival's Website.

Carnival, a Panama corporation with its headquarters in Florida, owns and operates the Website. FAC, ¶ 6. Per Carnival, when a user first visits the Website's homepage, a banner is displayed across the Website notifying visitors that Carnival uses cookies and other tools for several purposes, including to analyze traffic on the Website, and provides a link to Carnival's Privacy Notice. *See* Carnival Request for Judicial Note, ECF 38-1 ("RJN"), Ex. I. The Privacy Notice, as linked on every webpage, notified users of automatic collection of information about how users access and use the site, and disclosed that the information is collected through tracking technologies, embedded scripts, and "similar technology." *Id.*, p. 6 (emphasis added). Plaintiff acknowledges that Carnival had a privacy policy on the Website, like most websites do, that informed users of the use

1    of analytics, scripts, codes and the like. *Id.*, ¶ 29. But, Plaintiff claims that the policy is insufficient.

2    Plaintiff bases his entire class action case on the assertion that the privacy policy did not provide

3    adequate notice of the software use, but makes no mention of how and whether he utilized any

4    privacy features on his browser, toggled off cookies, or used do-not-track signals on his devices.

5    ### C.    Plaintiff's Allegations.

6        Plaintiff alleges that he has visited the Website "many times," most recently in or about

7    August 2020. FAC, ¶ 3. Plaintiff alleges that during his visits, "he did the kinds of things people

8    typically do when looking at websites, such as clicking on links to webpages of interest, scrolling

9    through pages, using dropdown menus, and using the website search tool." *Id.* Plaintiff alleges that

10   during his most recent visit to the Website, Mouseflow's software "created a video capturing

11   Plaintiff's keystrokes and mouse clicks on the Website, as well as Plaintiff's location and device

12   type." *Id.*, ¶ 4. Although Plaintiff fails to allege any facts about his keystrokes and mouse clicks,

13   including the specific content he accessed or information he input, he conclusively describes these

14   data points as "electronic communications" that transmitted "confidential information" which was

15   "being intercepted in real-time." *Id.*, ¶ 5. Plaintiff also makes a singular unsupported legal assertion

16   that Defendants record and observe the entry of Personally Identifiable Information ("PII") on the

17   Website (*id.*, ¶ 1), but does not specifically allege that Defendants recorded Plaintiff's PII nor

18   identify the PII Defendants allegedly recorded. Plaintiff does not allege that Mouseflow did anything

19   with the collected information other than that its software that Carnival licensed made the

20   information available to Carnival, the very entity with which Plaintiff interacted. Mouseflow should

21   not be hailed to court for the dispute that is clearly only between Plaintiff and Carnival.

22   ## III.   LEGAL STANDARD.

23       Plaintiffs bear the burden of supporting the exercise of personal jurisdiction over each

24   defendant individually. *See Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1258 (9th

25   Cir. 1989). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the

26   district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred*

27   *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)).

28

DEFENDANT MOUSEFLOW INC.'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(2) & 12(b)(6)

1  "California's long-arm statute permits a court to exercise personal jurisdiction over a defendant to

2  the extent permitted by the Due Process Clause of the Constitution." *Panavision Int'l, L.P. v.*

3  *Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Code Civ. Proc. § 410.10). Once a

4  defendant brings a challenge to the court's jurisdiction under Rule 12(b)(2), the plaintiff bears

5  the burden of establishing personal jurisdiction. *Michael v. New Century Fin. Servs.*, 65 F. Supp. 3d

6  797, 802 (N.D. Cal. 2014) (Freeman, B.).

7        Under Fed. R. Civ. P. 12(b)(6), a defendant may seek dismissal of a complaint for failure to

8  state a claim. "[C]ourts must consider the complaint in its entirety, as well as other sources courts

9  ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents

10 incorporated into the complaint by reference, and matters of which a court may take judicial notice."

11 *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). To survive a motion to

12 dismiss, a complaint must be plausible on its face; allegations that are "merely consistent" with a

13 defendant's liability or that only suggest "the mere possibility of misconduct" do not suffice.

14 *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009). While allegations of material fact are assumed to

15 be true and viewed in the light most favorable to the plaintiff, the Court "need not accept as true

16 allegations contradicting documents that are referenced in the complaint or that are properly subject

17 to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Moreover, legal

18 conclusions and "threadbare recitals of the elements of a cause of action" are to be ignored. *Ashcroft*,

19 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

20       A challenge to a federal court's subject matter jurisdiction is properly raised under a motion

21 to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

22 "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills*

23 *Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). Standing requires that the plaintiff suffered an

24 "injury in fact" that is "concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

25 (1992). In seeking to invoke a court's jurisdiction, plaintiffs bear the burden of proving that

26 jurisdiction exists as to each claim. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

27 *//*

28

1    **IV.    MOUSEFLOW IS NOT SUBJECT TO PERSONAL JURISDICTION.**

2         **A.    Mouseflow is Not Subject to General Personal Jurisdiction.**

3         A corporation may be subject to general personal jurisdiction "when their affiliations with

4    the State are so 'continuous and systematic' as to render them essentially at home in the forum

5    State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation

6    will be "at home" for general jurisdiction purposes in two paradigmatic forums: its place of

7    incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

8    General jurisdiction will only be available elsewhere in the "exceptional case" where a corporation's

9    affiliations with a forum are "so substantial and of such a nature as to render the corporation at home

10   in that State." *Id.* at 139, n.19; *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir.

11   2014). Plaintiff has not and cannot allege that Mouseflow has substantial, continuous and systematic

12   contacts with California that approximate "presence." To the contrary, Mouseflow is incorporated

13   and has its principal place of business in Texas and therefore is not subject to general jurisdiction.

14        **B.    Mouseflow is Not Subject to Specific Personal Jurisdiction.**

15        Courts in the Ninth Circuit employ a three-part test to determine whether a defendant's

16   contacts suffice to establish specific jurisdiction: "(1) the nonresident defendant must have

17   purposefully availed himself of the privilege of conducting activities in the forum by some

18   affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's

19   forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth v. Garcia

20   Marquez*, 942 F.2d 617, 620-21 (9th Cir. 1991). Plaintiffs bear the burden of satisfying the first two

21   prongs, and if they are met, the burden shifts to defendants "to set forth a 'compelling case' that the

22   exercise of jurisdiction would not be reasonable." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*,

23   647 F.3d 1218, 1228 (9th Cir. 2011). Each of the three tests must be satisfied to permit a finding of

24   personal jurisdiction over a non-resident defendant. *Peterson v. Kennedy*, 771 F.2d 1244, 1261 (9th

25   Cir. 1985) (underline added). If the court finds that one of the first two prongs has not been met, it

26   generally stops the inquiry and does not reach the rest of the analysis. *See, e.g.*, *Leroy-Garcia v.

27   Brave Arts Licensing*, No. C 13-01181 LB, 2013 WL 4013869, at *10 n.8 (N.D. Cal. Aug. 5, 2013).

28

1   "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related

2   conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277,

3   284 (2014). "The proper question is not where the plaintiff experienced a particular injury or effect

4   but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

5   "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Id.* Thus, the focus is

6   on a defendant's (and not the plaintiff's) substantial and meaningful contacts with the state.

7                   **1.      Mouseflow Did Not Purposefully Direct Acts Toward California.**

8           The purposeful availment factor requires a defendant to purposefully avail itself of the

9   privileges of conducting activities in the proposed forum or purposefully direct his activities toward

10  the forum. *Schwarzenegger*, 374 F.3d at 802. Purposeful availment and purposeful direction are two

11  distinct concepts; the "availment" analysis is most often used in suits sounding in contract, whereas

12  the "direction" analysis is most often used in suits sounding in tort. *Michael*, 65 F. Supp. 3d at 806.

13  Plaintiff's claims sound in tort. Accordingly, the Court should apply the purposeful direction test.

14          The "purposeful direction" analysis employs the "effects test," which is satisfied if the

15  defendant "(1) commits an intentional act; (2) *expressly aimed at the foreign state*; (3) causing harm

16  in the foreign state that the defendant knew was likely to be suffered in that state." *CE Distrib., LLC*

17  *v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004) (italics added). Plaintiff cannot in good

18  faith plead, or show, that Mouseflow—by allowing its software to work nationwide—purposefully

19  and intentionally committed acts expressly aimed at California and which caused harm that

20  Mouseflow knew would be suffered in California.

21          First, none of Mouseflow's alleged activities were expressly or purposefully aimed at

22  California. Plaintiff alleges that Mouseflow, a Texas company, entered a SaaS agreement with

23  Carnival ("SaaS Agreement"), a Panama company with headquarters in Florida. FAC, ¶¶ 6-7, 23.

24  The SaaS Agreement offered general software services not tied to any location, was governed by

25  Delaware law, and contemplated that disputes related to the contract would be resolved in Delaware.

26  Declaration of Jess Frandsen ("Frandsen Decl."), ¶ 8. In other words, Mouseflow, a non-resident,

27  contracted with Carnival, a non-resident, to provide a software as a service which resulted in

28

*Carnival* using Mouseflow's code on its non-state specific website, to which Plaintiff unilaterally visited. The alleged facts show that other than providing the code and software to Carnival, Mouseflow did not commit any other affirmative act, much less one that was aimed toward California. Mouseflow's software merely collected and analyzed website information and made such information available to Carnival through a cloud-based platform. *See e.g.*, FAC, ¶ 18, 23-24. Mouseflow did not have any specific contacts with California, and the software's contacts with Plaintiff are based on the "unilateral activity of another party or a third person"—including the "random," "fortuitous," and "attenuated" fact that that Plaintiff resides in California. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The mere fact that Plaintiff was allegedly injured by another party's (here, Carnival's) use of Mouseflow's software while in California is not sufficient to connect Mouseflow to California. *Walden*, 571 U.S. at 290; *Michael*, 65 F. Supp. 3d at 807 ("mere injury to a forum resident is not a sufficient connection to the forum") (citations omitted); *McGibney v. Retzlaff*, No. 14-cv-01059-BLF, 2015 WL 3807671, at *4 (N.D. Cal. June 18, 2015) (same).

Plaintiff's allegations regarding purposeful direction on the part of Mouseflow are attenuated at best. Plaintiff claims that the fact that Mouseflow allowed Carnival to use the code to analyze user traffic from California somehow means that Mouseflow targeted the software's "interception" to California consumers (FAC, ¶ 11), and that Mouseflow should have known that Carnival's website attracts California consumers "above most others." *Id.*, ¶ 14. But the fact that Mouseflow's software analyzed data stemming from California does not mean that Mouseflow committed any acts *expressly aimed* at California. Plaintiff's allegations regarding Carnival's target market, Carnival's privacy policy, and Carnival's viewer base have nothing to do with how and whether Mouseflow's conduct—allowing its software to operate—was targeted to California above all other states. Moreover, Plaintiff fails to explain whether Mouseflow knew about Carnival's alleged substantial nexus to California or whether such knowledge formed the basis for the business relationship between Mouseflow and Carnival in any way. *See e.g.*, *E\*Healthline.com, Inc. v. Pharmaniaga Berhad*, No. 2:18-cv-01069-MCE-EFB, 2018 WL 5296291, at *5 (E.D. Cal. Oct. 23, 2018) ("[W]hile it is clear that Pharmaniaga knew EHL was a business in California, Plaintiff has not put

forth sufficient information to show that Defendant Pharmaniaga expressly aimed their conduct related to [ ] misappropriation of confidential information [ ] at California.").

In short, Plaintiff would have experienced the same alleged harm whether located in California or in any other place. California happens to be where Plaintiff chose to be when he accessed the publicly available Website. The effects of Mouseflow's SaaS Agreement with Carnival, and services offered to Carnival, is not connected with California in a "meaningful way," especially since Plaintiff alleges that Carnival has control over the way in which it uses the software.

### 2. Plaintiff's Claims Do Not Arise Out of the SaaS Agreement.

Plaintiff also must demonstrate that his claims arise out of or result from Mouseflow's affirmative contacts with California. To determine whether a claim arises out of forum-related activities, courts apply a "but for" test. *Voodoo SAS v. SayGames LLC*, No. 19-cv-07480-BLF, 2020 WL 3791657, at *7 (N.D. Cal. July 7, 2020) (Freeman, B.) (citing *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007)). The question is whether the plaintiff's claims would have arisen but for the defendant's contacts with California. *Id.* Thus, Plaintiff must prove that his claims "bear a 'substantial connection' or 'substantial nexus' to the nonresident's forum contacts." *Ganezer v. DirectBuy, Inc.*, Case No. 08-8666 GAF (RCx), 2012 WL 12867971, at *4 (C.D. Cal. Jan. 30, 2012) (quoting *Vons Companies, Inc. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 452 (1996)).

Here, there are no relevant forum contacts, much less ones that bear connection to Plaintiff's claims. Plaintiff's claim that he was wiretapped without consent arises out of his visit to the Website, Carnival's use of Mouseflow's code and software, and Carnival's alleged failure to sufficiently advise Plaintiff that Carnival would record visitors' interactions. Specifically, Plaintiff alleges that Carnival—not Mouseflow—"owns and operates the website Carnival.com." FAC, ¶ 6. Plaintiff alleges that Carnival—not Mouseflow—"voluntarily embedded the Mouseflow JavaScript code on Carnival.com." *Id.*, ¶ 23.[2] Plaintiff does *not* allege that Mouseflow controlled interactions between

---

[2] In addition, Plaintiff now alleges that "Defendants intentionally installed the wiretap at issue," but Plaintiff does not explain how these contradictory allegations can both be true. *Id.*, ¶ 11. Further, as

1  visitors to Carnival.com and Carnival. Plaintiff also does *not* allege that Mouseflow had the

2  contractual right to make modifications to Carnival.com, or disclose to visitors that Carnival was

3  using Mouseflow's software to monitor visitor movements.

4      Plaintiff fails to demonstrate any affirmative act by Mouseflow toward consumers in

5  California and reinforces that he would have experienced the same alleged harm by visiting the

6  Website and interacting with the Website regardless of the state he was in at the time of his visit,

7  thereby affirmatively failing the 'but for' test. Given the absence of Mouseflow's forum-related

8  conduct tied to this suit, the Court should dismiss Mouseflow for lack of personal jurisdiction.

9           **3.      Exercising Jurisdiction Over Mouseflow in California Would Not Be**

10          **Reasonable.**

11     Although Plaintiff fails to carry his burden to establish that Mouseflow purposefully directed

12  any activities at California, let alone that his claim that he was wiretapped without his consent arises

13  out of those activities, Mouseflow will address the third factor for the sake of completeness. The

14  Ninth Circuit considers seven factors in the reasonableness analysis:

15          (1) the extent of the defendants' purposeful interjection into the forum state's affairs;

16          (2) the burden on the defendant of defending in the forum; (3) the extent of conflict

17          with the sovereignty of the defendants' state; (4) the forum state's interest in

18          adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;

19          (6) the importance of the forum to the plaintiff's interest in convenient and effective

20          relief; and (7) the existence of an alternative forum.

21  *CE Distribution*, 380 F.3d at 1112 (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,

22  328 F.3d 1122, 1132 (9th Cir. 2003)). Here, there is nothing in Plaintiff's allegations demonstrating

23  that the exercise of personal jurisdiction over Mouseflow in this forum would be reasonable.

24      First, the factors that dictate whether a defendant has "purposefully interjected" its activities

25  into the forum "are coextensive with those weighing on the purposeful direction analysis" above.

26  _____

27  detailed above, Plaintiff's claims do not arise out of the installation of Mouseflow's code, but out of

28  Carnival's alleged failure to sufficiently disclose the use of the code.

DEFENDANT MOUSEFLOW INC.'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(2) & 12(b)(6)

*Sayre v. Burle Indus. Inc.*, 988 F.2d 121 (9th Cir. 1993). As shown, Mouseflow did not purposefully direct activity toward California merely because Plaintiff happened to be in California when he visited the Website. Moreover, the SaaS Agreement does not connect Mouseflow to California, and the servers and software are located outside of California. *See* Frandsen Decl., ¶ 10.

Second, a court must "examine the burden on the defendant in light of the corresponding burden on the plaintiff." *Brand*, 796 F.2d at 1075. This factor also weighs against the reasonableness of jurisdiction, or at worst is neutral. Mouseflow could not have anticipated a tort claim against it in California—or in any other state—stemming from its subscriber's use and control of Mouseflow's software. And, other than Plaintiff, none of the witnesses or evidence are located in California. The burden on Mouseflow of litigating in California is heavy; conversely, the burden on Plaintiff of litigating outside of California, to the extent he has a claim against Mouseflow, is slight.

The third factor—the extent of conflict with the sovereignty of the defendants' state—is not at issue here, where all parties reside within the United States.

The fourth factor—the forum state's interest in adjudicating the dispute—is also, at worst, neutral. Texas has an interest in providing effective means of redress to its corporate citizens who offer software as a service nationwide, and has and can apply California law as needed.

Fifth, an efficient resolution of this controversy can best be obtained in another jurisdiction, such as Texas.[3] In considering which forum could most efficiently resolve a dispute, a court focuses on the location of the evidence and witnesses. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). As stated, apart from Plaintiff, all of the anticipated witnesses and evidence are located outside of California.

Sixth, although the importance of the forum to the plaintiff nominally remains part of this test, cases have cast doubt on its significance. *See, e.g.*, *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) ("A mere preference on the part of the plaintiff for its home forum does

---

[3] Even if California law does apply, there is little merit to the argument that California has a superior interest in hearing this matter because of this Court's familiarity with California law. *See Falkenstein v. Shipco Transp. Inc.*, 2013 WL 5770380, at *4 (N.D. Cal. Oct. 24, 2013).

not affect the balancing[.]"); *Roth*, 942 F.2d at 624 ("[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference."). Plaintiff's convenience should "not significantly influence [the Court's] analysis." *Caruth*, 59 F.3d at 129.

Finally, Plaintiff bears the burden of proving the unavailability of an alternative forum. *See Fed. Deposit Ins. Corp. v. British-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1445 (9th Cir. 1987). Plaintiff does not make any showing that he would be precluded from suing Mouseflow outside of California or that his claims could not be effectively remedied in another jurisdiction. *See Core-Vent*, 11 F.3d at 1490. None of the alleged misconduct by Mouseflow—offering a 'software as a service' which Plaintiff alleges is an eavesdropping or wiretapping device—is felt in any disproportionate way in California such that Mouseflow would expect to be hauled into court in California. Accordingly, Plaintiff's claims against Mouseflow should be dismissed.

## V.   PLAINTIFF FAILS TO STATE CLAIMS UNDER RULES 12(b)(1) AND 12(b)(6).

### A.   Plaintiff Fails to Plausibly Allege Facts to Support a Violation of Section 631(a).

Section 631(a) of CIPA—entitled "Wiretapping"—contains three operative clauses protecting against "three distinct and mutually independent patterns of conduct": (i) "intentional wiretapping" of any telegraph or telephone wire, line, cable without authorization, (ii) "willfully attempting to learn the contents or meaning of a communication in transit over a wire" without consent, and (iii) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (Freeman, B.) ("*Google*") (quoting *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978)). It is undisputed that Section 631(a) "proscribes third party access to ongoing communications." *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012).

Here, Plaintiff asserts a violation of all three clauses, and thereby concludes that "Defendants aided, agreed with, and conspired with each other to implement Mouseflow's technology and to accomplish the wrongful conduct at issue here." FAC, ¶ 44. In particular, Plaintiff alleges that Mouseflow is liable under Section 631(a)[1] because Mouseflow's "software" is a machine, instrument or contrivance that "intentionally tapped, electrically or otherwise, the lines of internet

communication between Plaintiff … and carnival.com…" FAC, ¶ 41, 42. Plaintiff alleges also that Mouseflow is liable under Section 631(a)[2] because it "read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff . . . while the electronic communications were in transit or passing over any wire, line or cable" without Plaintiff's consent. *Id.*, ¶ 43. Plaintiff then quotes from the third clause pertaining to use of said information, but does not specifically allege that Mouseflow violated the third clause. *Google*, 457 F. Supp. 3d at 827.

First, as a threshold matter, Plaintiff fails to establish a violation of Section 631(a) because he fails to plausibly allege that Carnival's use of a JavaScript code offered by a service provider is an "unauthorized tapping" by a "third party" under that section. Second, the first clause protects only communications that are made over a "telegraph or telephone wire, line, or cable," which are not at issue here. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (holding that the first clause of Section 631(a) is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables"); *Google*, 457 F. Supp. 3d at 825 (also holding that the first clause of Section 631(a) "protects only communications that are made over a wire, line, or cable" of telegraphs or telephones) (internal quotations omitted). Third, Plaintiff fails to establish that a "communication" was in transit such that "contents" or "messages" could be read by Mouseflow under the second clause. Accordingly, Plaintiff's Section 631 claim fails.

### 1. Mouseflow Did Not Violate Section 631(a) Because It Was Not a Third Party to Plaintiff's Purported Communications with Carnival.

Section 631 only prohibits *third parties* from intruding upon a communication. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 125 (N.D. Cal. 2020); *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844-45 (N.D. Cal. 2017) ("*Facebook II*") (holding that Facebook could not "intercept" communications to which Facebook was already a party); *Thomasson v. GC Servs. Ltd. P'Ship*, 321 F. App'x 557, 559 (9th Cir. 2008) (explaining that California courts interpret the anti-eavesdropping provision of the CIPA "to refer to a third party secretly listening to a conversation between two other parties"); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (same). Section 631 does not create liability for someone "who is a 'party' to the communication." *In re Facebook, Inc.*

1   *Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("*Facebook III*") (citing *Warden v. Kahn*,

2   99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping

3   by a third party and not to recording by a participant to a conversation.")).

4           For communications made through or on the internet, the Ninth Circuit instructs courts to

5   examine the "technical context" presented by the communications at issue to determine the parties to

6   those communications. *See Facebook III*, 956 F.3d at 607-08. Here, Plaintiff admits that **Carnival**

7   used Mouseflow's embedded codes and software which allowed Mouseflow "access" to the

8   purported communications as a service provider, and <u>does not</u> allege that Mouseflow independently

9   tapped the website browser to embed its own codes as a third party or that Mouseflow learned or

10  used the information collected for its own purposes. *See* FAC, ¶¶ 23-25. In other words, because the

11  Mouseflow SaaS is a "tool" used by businesses like Carnival that "records, in real time, a website

12  visitor's interactions on a website," it cannot also be a third-party tap by the entity who made the

13  tool. To be sure, "wiretapping" is defined by courts interpreting CIPA to mean "intercepting

14  communications by an *unauthorized connection* to the transmission line," *People v. Ratekin*, 212

15  Cal. App. 3d 1165, 1168 (Ct. App. 1989), but here, Plaintiff alleges that the code was *embedded* by

16  the Website's own operator, Carnival, onto the Website, and not that Mouseflow, without

17  authorization, connected to it. *See* FAC, ¶ 23.

18          In essence, Mouseflow provides a service to Carnival for the exclusive purpose of providing

19  analytics about visitors' use of the Website. Mouseflow does not independently tap into, or insert

20  itself into, a conversation or communication. Based on Plaintiff's allegations and common sense

21  understanding of analytics services, Mouseflow is effectively licensing its code to Carnival and

22  providing a data tool to Carnival related to website interactions in the manner of a software platform

23  where Carnival may view that data. *See* FAC, ¶¶ 20, 22-25. Plaintiff does not allege, nor can he, that

24  Mouseflow used Plaintiff's visitor data for any purpose other than to provide it to Carnival through

25  the software that Carnival licensed—i.e., to the very party to whom Plaintiff desired to provide the

26  information. Thus, Carnival's use of Mouseflow's JavaScript code and software services do not

27  amount to wiretapping by a third party, Mouseflow.

28

15

DEFENDANT MOUSEFLOW INC.'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(2) & 12(b)(6)

What is more, the recently enacted California Consumer Privacy Act ("CCPA") treats service providers as an extension of a business and specifically carves out service providers from the definition of a "third party" for purposes of enumerating prohibitions related to sharing and disclosure of consumer information to third parties. *See* CA Civil § 1798.140(w); California Consumer Privacy Act, 2018 Cal. Legis. Serv. Ch. 55 (A.B. 375).3 If statutes are capable of co-existing, courts must interpret the statutes in harmony. *In re Transcon Lines*, 58 F.3d 1432, 1440 (9th Cir. 1995), *as amended on denial of reh'g* (July 10, 1995) ("[W]e must, whenever possible, attempt to reconcile potential conflicts in statutory provisions."). "Congress must be presumed to have known of its former legislation . . . and to have passed . . . new laws in view of the provisions of the legislation already enacted." *Id.* (internal quotations and citations omitted)). Looking at the alleged "technical context," and in accordance with legislative interpretation, Plaintiff does not allege that Mouseflow otherwise operated like a third party under California's penal statute.

The *Revitch v. New Moosejaw, LLC* decision does not compel a different result. 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). In *Revitch*, the court found a website analytics provider, NaviStone, could be considered a third party under Section 631. *Id.* However, *Revitch* is an outlier, unpublished, and not binding on this Court. The court in that case did not consider the definition of "wiretapping" under CIPA; nor did it discuss *Ratekin* or the CCPA. Moreover, the allegations here are clear that Mouseflow did not embed its own software code onto the Website, compelling this court to consider the technical context of the alleged communication. Indeed, a finding that Mouseflow is a third-party wiretapper subject to fixed statutory damages under a penal statute for the mere provision of a software as a service to website operators would not only criminalize the use of basic website functionality tools, but would pose an existential threat to service providers based on a website operator's failure to obtain proper consent or provide notice of such web tools to consumers. This draconian result is clearly not what the drafters of Section 631(a) intended, especially at a time when the internet did not exist in the form that it does now.[4]

---

[4] Plaintiff's narrative of the purported dangers of analytics services using "scripts" have nothing to do with his particular complaint. FAC, ¶ 26. Plaintiff claims that such use—implying that

DEFENDANT MOUSEFLOW INC.'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(2) & 12(b)(6)

### 2. Mouseflow Did Not Violate Section 631(a)[1] Because Plaintiff Does Not Allege a Telegraph or Telephone Wire, Line or Cable.

The first clause of Section 631(a) only prohibits intentional and unauthorized taps or connections with telegraph or telephone wires, lines, or cables. *Matera*, 2016 WL 8200619, at *18; *Google*, 457 F. Supp. 3d at 825. Here, Plaintiff alleges that Mouseflow and Carnival tapped "the lines of internet communication." FAC, ¶ 42. Plaintiff does not allege that Mouseflow tapped telegraph or telephone wires, lines or cables nor does he allege how the requirement of a telegraph or telephone wire, line, cable, or instrument is met. *Id.* The channels of "internet communication" do not take place over "telephone" or "telegraph" lines. *See, e.g.*, *Verizon v. FCC*, 740 F.3d 623, 629 (D.C. Cir. 2014) (internet is no longer connected to over telephone lines). Thus, Plaintiff fails to state a claim for violation of the first clause of Section 631(a).

### 3. Mouseflow Did Not Violate Section 631(a)[2] Because the Software Code Did Not Tap into the "Contents" of "Communications."

Plaintiff's Section 631(a)[2] claim fails because that section prohibits only the "unauthorized access of the 'contents' of any communication." *Brodsky*, 445 F. Supp. 3d at 127 (quoting Cal. Pen. Code § 631(a)). The analysis of whether information is the "content" of a communication under CIPA and under the federal Wiretap Act is identical. *Id.* Accordingly, "contents" means "the intended message conveyed by the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). "Contents" does not include "information regarding the characteristics of the message that is generated in the course of the communication" such as "the name, address, and

---

Mouseflow's software code is of similar technology—may not be collecting data anonymously, and may be collecting actual text typed in forms, and other sensitive user information such as passwords and credit card numbers. *Id.*, ¶ 27. However, Plaintiff does not allege that Mouseflow's software actually does this, or that Carnival used the software in this way. Nor does Plaintiff allege that *his* actual texts, passwords or credit card number was collected. Lastly, Plaintiff's superfluous allegations pertaining to data leaks, health information and "insecure practices" are just odd, sloppy, and plainly irrelevant. *Id.*, ¶¶ 27, 59, 60.

1   subscriber number or identity of a subscriber or customer." *Id.* (quotations omitted); *see also United*
2   *States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (holding "origination, length, and time" of
3   telephone call was not "contents"). *Brodsky*, 445 F. Supp. 3d at 127 ("user names, passwords, and
4   geographic location information are not contents").

5       Here, Plaintiff's specific factual allegations pertaining to his interactions make clear that the
6   information at issue were merely the characteristics of his purported messages, and were not
7   *contents* intended to be communicated to Carnival. *In re Zynga*, 750 F.3d at 1106. In other words,
8   Plaintiff fails to allege that Mouseflow captured or accessed any "contents" of communications.
9   Plaintiff merely alleges that Mouseflow "captur[ed] Plaintiff's keystrokes and mouse clicks on the
10  website, as well as Plaintiff's location and device type." FAC, ¶ 4. Plaintiff himself calls such
11  information "interactions" (*id.*, ¶ 16) that provide "insights about the[] website visitors' journey and
12  conversions"—not contents of any message or communication. *Id.*, ¶ 25. Nor can Plaintiff's
13  unidentified keystrokes, mouse movements and mouse clicks be deemed an "intended message."
14  Plaintiff does not allege that he clicked on any specific calls-to-action on the Website or typed/input
15  any specific information on the Website. He merely alleges that "he did the kinds of things people
16  typically do when looking at websites." FAC, ¶ 3. If Plaintiff's vague allegations regarding
17  interactions are accepted as "contents" for purposes of identifying "messages," then Mouseflow can
18  be penalized if it captured anonymized sources aimlessly scrolling up and down on the Website,
19  which surely is not the intent of Section 631(a)[2]. *In re Zynga*, 750 F.3d at 1100 (upholding the
20  district court's dismissal of the claims against the defendants for the plaintiffs' failure to allege
21  "contents" of communications had been disclosed). *See also In re Century Aluminum Co. Sec. Litig.*,
22  729 F.3d 1104, 1108 (9th Cir. 2013) (Rule 8 demands "something more" than "allegations that are
23  'merely consistent with'" a theory of liability).

24      Plaintiff attempts to salvage his deficient pleading by characterizing the data points and web
25  interactions as confidential "electronic communications." FAC, ¶¶ 1, 2. However, Plaintiff does not
26  identify what communications between Plaintiff and Carnival were actually intercepted, read, and
27  recorded, or what Mouseflow exactly learned from such "communications." Indeed, whether any

28

1   "communication" by Plaintiff whatsoever was recorded by the JavaScript code is a threshold matter,

2   and Plaintiff fails to demonstrate it.

3       Because the statute does not define "communication," the term's "commonly accepted

4   meaning applies." *See In re Jose A.*, 5 Cal. App. 4th 697, 700 (1992) (citing *People ex rel. Younger*

5   *v. Superior Court*, 16 Cal. 3d 30, 43 (1976)). To discern a term's commonly accepted meaning,

6   courts rely on dictionary definitions. *See Younger*, 16 Cal. 3d at 43. Black's Law Dictionary defines

7   "communication" as "[t]he interchange of messages or ideas by speech, writing, gestures, or

8   conduct…" Black's Law Dictionary (11th ed. 2019). Under such definition, a "communication"

9   necessarily entails the transmittal of messages between participants—however, a one-sided

10  recording of website interactions is not the equivalent to recording messages conveyed from Plaintiff

11  to Carnival or vice versa. For this reason, courts that have applied this statute to internet

12  communications have done so only in the context of intercepted email messages. Accordingly,

13  Plaintiff's citations to *Matera* (which involved email communications) and *Facebook III* (which did

14  not discuss clause 2 but rather only whether Facebook was a third party when it used plug-ins to

15  collect browser histories of users) are inapplicable. *See* FAC, ¶ 40.

16          **4.       Plaintiff's Claim Under 631(a) Fails Because Plaintiff Was on Notice of**

17                  **Mouseflow's Conduct.**

18      A plaintiff that had knowledge of the alleged interception cannot state a claim under CIPA.

19  Cal. Penal Code § 631(a); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*,

20  745 F. App'x 8 (9th Cir. 2018). Here, Plaintiff alleges that he was unaware of and did not consent to

21  Carnival's recordation of his keystrokes, mouse clicks, and other "interactions" or the disclosure of

22  such data to Mouseflow. FAC, ¶¶ 5, 16. But per Carnival, its Privacy Notice expressly disclosed to

23  users like Plaintiff that information regarding their interactions with the Website are collected by

24  Carnival *and its service providers*. RJN, Ex. H, p. 6. Indeed, the Privacy Notice expressly stated that

25  Carnival and its service providers typically collect the information "*through a variety of tracking*

26  *technologies, including cookies, Flash objects, web beacons, embedded scripts, location-identifying*

27  *technologies, and similar technology.*" *Id.* Moreover, the Privacy Notice stated that Carnival and its

28

service providers collect information such as "the pages you visit, *the links you click, the ads you view and click on*, purchase information and your checkout process, *your location when you access or interact with our Service*, and other similar actions." *Id.*

Here, Plaintiff alleges that the Privacy Notice does not furnish consent from website visitors because Mouseflow's technology begins wiretapping before a visitor would have an opportunity to read the Privacy Notice, the link to Carnival's Cookie Policy was "designed to be unobtrusive and easy to overlook," and the Privacy Notice did not specifically disclose that website communications were being recorded and shared with Mouseflow. FAC, ¶ 29. However, Plaintiff does not allege that *he* was not on notice or was unaware of the existence of the privacy policy on his August 2020 visit (from which his claims arise) nor can he since he used the Website "many times," and the existence of a privacy policy on websites is common knowledge. FAC, ¶ 3. Because a website user is deemed to have consented to a website's privacy disclosure so long as he "has actual or constructive knowledge of [the] website's terms and conditions," Plaintiff consented to the collection of his data during his use of the Website. *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483-84 (9th Cir. 2020); RJN, Ex. I; *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW, 2005 WL 756610, at *2 (N.D. Cal. Apr. 1, 2005) (holding that plaintiff was bound to the terms of use on defendant's website where the terms appeared on every page of the website "in an underlined and highlighted format which signals in a common Internet convention that users can view the terms by clicking on the hyperlink").

What is more, Plaintiff has not established that Mouseflow's conduct amounts to *surreptitious* or *unauthorized* wiretapping when Carnival's publicly available Privacy Notice disclosed the data collection at issue. That Plaintiff argues the lack of affirmative consent to the use of third-party analytics tools is a red herring. CIPA does not require affirmative consent, but rather, reasonable notice. *See e.g.*, *Smith*, 262 F. Supp. 3d at 954; *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1214 (N.D. Cal. 2014).

///

///

**B.      Plaintiff Fails to Plausibly Allege Facts to Support a Violation of Section 635.**

**1.      Plaintiff Lacks a Private Right of Action and Standing.**

CIPA provides a private right of action only to those who have "been injured by a violation of this chapter may bring an action against the person who committed the violation." Cal. Pen. Code § 637.2(a). However, the mere manufacture, possession, or sale of an eavesdropping "device" by a defendant (as alleged here under Section 635) does not cause injury. In *Cohen v. Casper Sleep, Inc.*, which involved the analogous federal statute, 18 U.S.C.A. § 2512, the court held it would be "constitutionally problematic" to afford a private right of action against defendants who merely possessed a wiretapping device because "plaintiffs who suffered no injury in fact would still be able to sue." 2018 WL 3392877, at \*5 (S.D.N.Y. July 12, 2018); *see In re Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at \*7 (N.D. Cal. Oct. 27, 2016) (Section 2512 does not establish private right of action). While Plaintiff alleges that he has "been injured by the violations of Cal. Penal Code § 635" (*see* FAC, ¶ 54), this conclusory allegation does not identify a specific injury nor support a private right of action under Section 635. *Ashcroft*, 556 U.S. at 678.

Plaintiff lacks Article III standing to assert a claim for violation of Section 635 for the same reason. A plaintiff must have "suffered an injury in fact" to have standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A plaintiff "must show that he . . . suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation. *Id.* at 1548 (citation omitted). Defendants' actions must have "affect[ed] the plaintiff in a personal and individual way." *Id.* A plaintiff does not automatically meet the standing requirement for a violation of a section of the statute by demonstrating standing for a violation of another section of a statute. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733-34 (2008) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (citation and internal quotations omitted). As detailed above, Plaintiff does not allege an "injury in fact" that is "concrete and particularized" from the alleged violation of Section 635 and therefore lacks standing. *Lujan*, 504 U.S. at 560; *Ashcroft*, 556 U.S. at 678.

///

### 2.   Mouseflow's Software Is Not a Device Primarily or Exclusively Designed for Eavesdropping Upon Communications.

Section 635 solely applies to a "device" that is "primarily or exclusively" designed for "eavesdropping." Again, courts must adopt the narrowest construction of statutes that are penal. *People v. Mobil Oil Corp.*, 143 Cal. App. 3d 261, 276 (Ct. App. 1983). "Where the statute to be construed is a penal one, these principles apply even when the underlying action is civil in nature." *Id.* (citing *Walsh v. Dept. of Alcoholic Bev. Control*, 59 Cal. 2d 757, 765 (1963)). A narrow interpretation of the term "device" forecloses the conclusion that Mouseflow's software code is a device, particularly when courts in this District have rejected the argument that a "cookie," which can track website users, is a device. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) ("*Facebook I*"). Plaintiff attempts to differentiate cookies from Mouseflow's Javascript code (FAC, ¶ 26), but this distinction is without a difference under applicable case law. As stated, Javascript codes allegedly behave and are used in a manner identical to any technology designed to facilitate web-browsing activity, including cookie technology, which can be used for a variety of purposes. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 502-03 (S.D.N.Y. 2001) (explaining how cookies are computer programs commonly used by websites to store useful information that help with website operation, just as session replay tools employ computer programs to do so as well).

Even if Mouseflow's software code can be considered a "device," Plaintiff's allegations do not support a plausible inference that the software code is "primarily or exclusively designed or intended for eavesdropping" as required by Section 635. First, "eavesdropping" (unlike wiretapping) under CIPA is "interception of communications by the use of equipment which is *not* connected to any transmission line." *Ratekin*, 212 Cal. App. 3d at 1168 (emphasis added). Courts have repeatedly found wiretapping and eavesdropping under the CIPA to be independent, discreet acts. *See Facebook III*, 956 F.3d at 607-08 (noting that California courts have often distinguished between eavesdropping and wiretapping) (citation omitted). Here, Plaintiff alleges that Mouseflow tapped into the "lines of internet communications" (FAC, ¶ 42) and that it functions as a "wiretap" (*id.*, ¶

19). Thus, Plaintiff cannot also allege that the same software constituted an independent eavesdropping device, especially since Plaintiff admits that Carnival embedded the tool onto its own website. Second, as demonstrated above, there is no support for the conclusory proposition that website interactions constitute "communications" under CIPA. Thus, Mouseflow's software code cannot be primarily or exclusively designed for eavesdropping if Plaintiff failed to establish that eavesdropping of communications occurred.

In addition, the factual allegations in the Complaint demonstrate that Mouseflow's software code is designed and intended to help companies improve their websites and do not support Plaintiff's conclusory allegation that Mouseflow's software code is "primarily or exclusively" designed for eavesdropping. Plaintiff alleges that the code reveals "glitches and errors" on websites (FAC, Page ID 5:1-4). The software "helps enterprises like . . . Carnival, and many more to gain valuable insights about their website visitors' journey and conversions." *Id.*, ¶ 25. These are the primary purposes of Mouseflow's software code, not to eavesdrop. *Id.* To interpret otherwise would capture a broad swath of devices—microphones, tape recorders, and cellular telephones—that *could* be used to eavesdrop, even though it is not their primary or exclusive design. *See, e.g.*, *United States v. Schweihs*, 569 F.2d 965, 968 (5th Cir. 1978) (discussing analogous federal statute and observing that Congress did not intent to attach criminal liability to "legitimate electronic devices" merely because they *could* be used for wiretapping or eavesdropping). Mouseflow's software is best understood as "part of [the] routine internet functionality" that makes digital commerce and customer service possible. *See Facebook II*, 263 F. Supp. 3d at 846.[5]

---

[5] Although the court in *Revitch* reached a contrary conclusion on this issue, the court did not provide its reasoning or cite any authority other than the statute itself. *Id.* at *3. All the *Revitch* court did was "assume the truth of [the plaintiff's] allegation that [the defendant's] code is a 'device … primarily or exclusively designed or intended for eavesdropping upon the communication of another,'" without explaining what facts the plaintiff pleaded which enabled the court to reach the conclusion that the claim was adequately plead. Without more, Mouseflow submits that the unpublished *Revitch*

C.      **Plaintiff Fails to State a Claim for Invasion of Privacy.**

The California Constitution "set[s] a high bar for an invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, No. CV 13-01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). To plead a claim for invasion of privacy under the California Constitution, plaintiffs must allege that: (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion constitutes a "serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012). The first two elements require a plaintiff to plead facts showing that the information invaded was actually private—for "[t]here can be no privacy in that which is already public." *Hill v. NCAA*, 865 P.2d 633, 648 (Cal. 1994). The third element demands showing that the invasion was an "egregious breach of the social norms"—a standard that is not satisfied by "[e]ven disclosure of personal information, including social security numbers." *Low*, 900 F. Supp. 2d at, 1025; *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding alleged commingling and disclosure of personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences is not highly offensive); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (disclosing for marketing purposes was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012) (Apple's disclosure of the plaintiffs' addresses, gender, age, and current location to third-party apps did not "constitute an egregious breach of social norms.").

Here, Plaintiff fails to allege a reasonable expectation of privacy. Plaintiff generally alleges that he had a "reasonable expectation that [his] PII and other data" would remain confidential. FAC, ¶ 59. But, as explained above, Plaintiff alleges no specifics about what he did when he visited the Website or what information (if any) Plaintiff entered, making it impossible to determine whether such information can be attributable to Plaintiff or whether such information is public or private. Moreover, Plaintiff *intended* to interact and communicate with Carnival. Plaintiff's allegation that he

decision is an outlier, and that this Court should instead rely on the authority contradicting *Revitch* as well as the interpretive presumption in favor of a defendant alleged to have violated the Penal Code.

was unaware of Mouseflow's specific role in the Website's functionality does not alter this analysis. The use of third-party vendors, programs, software, and third-party cloud storage for a variety of purposes is commonplace on the internet. Reasonable internet users recognize that when they input information on a website, the businesses running those websites "routinely embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries and other utilities." *Facebook II*, 263 F. Supp. 3d at 846.

Plaintiff also fails to allege that the alleged breach of that privacy constitutes an "egregious breach of social norms." At most, Plaintiff alleges that Mouseflow captured his "mouse clicks and keystrokes," which he speculates amounted to the collection of certain information he entered into text fields on Carnival's Website. FAC, ¶¶ 4–5. Even accepting this speculation as true, this is the very same information that Plaintiff was purposefully providing to Carnival, and Plaintiff nowhere alleges that Mouseflow's software was doing anything beyond displaying this exact same information to Carnival. *See, e.g.*, *Google*, 457 F. Supp. 3d at 830 (observing that many courts have found that the "collection—and even disclosure to certain third parties—of personal information about the users of a technology may not constitute a sufficiently 'egregious breach of social norms' to make out a common law or constitutional privacy claim," including cases involving disclosure of users' browsing histories). For all these reasons, Plaintiff's claim fails as a matter of law.

## VI.    CONCLUSION.

While allegations in a complaint are to be construed favorably for a plaintiff, they must also be plausible. Given that Penal Code statutes are to be interpreted narrowly in favor of a defendant, Plaintiff's allegations are not plausible. The FAC should be dismissed with prejudice.

DATED: March 2, 2021                    BLANK ROME LLP

                                        By: */s/ Julianna Simon*
                                            Ana Tagvoryan
                                            Harrison Brown
                                            Julianna Simon
                                        Attorneys for Defendant,
                                        MOUSEFLOW INC.